**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| INTERNATIONAL BROTHERHOOD ) <br> OF TEAMSTERS, AIRLINE ) <br> DIVISION, ) <br> 25 Louisiana Avenue NW ) <br> Washington, DC 20001 ) <br> ) <br> and ) <br> ) <br> AIRLINE PROFESSIONALS ASSOC. ) <br> OF THE INTERNATIONAL ) <br> BROTHERHOOD OF TEAMSTERS, ) <br> LOCAL UNION NO. 1224 ) <br> 2754 Old State Route 773 ) <br> Wilmington, OH 45177 ) <br> ) <br>                  Plaintiffs, ) <br> ) <br>                      v. ) <br> ) <br> SOUTHERN AIR, INC. ) <br> 7310 Turfway Road, Suite 400 ) <br> Florence, KY 41042 ) <br> ) <br>                  Defendant. ) | Case No.: _____ <br><br> Hon. _____ |

**PLAINTIFFS' COMPLAINT AND PETITION
TO VACATE ARBITRATION AWARD**

Plaintiffs International Brotherhood of Teamsters, Airline Division ("IBT") and Airline Professionals Association of the International Brotherhood of Teamsters, Local Union No. 1224 ("Local 1224") (collectively, "Plaintiffs" or the "Union"), bring this action against Defendant Southern Air, Inc. ("Southern" or "the Company") pursuant to Section 3 First (q) of the Railway Labor Act ("RLA"), 45 U.S.C. § 151, et seq., to review and set aside an arbitration award ("Decision" or "Award") issued on June 12, 2019. The Award is invalid and unenforceable

1

because it fails to comply with the requirements of the RLA, fails to conform, or confine itself, to matters within the scope and authority of the System Board's jurisdiction, fails to meet due process requirements, does not draw its essence from the applicable collective bargaining agreement, and improperly rests on the arbitrator's notions of industrial justice formed by considerations outside of the express or implied terms of the applicable collective bargaining agreement.

The Union seeks preliminary and permanent injunctive relief, declaratory judgment and other appropriate relief brought pursuant to the RLA, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, to prohibit the Company from seeking to enforce the Award.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction under 45 U.S.C. § 153 First (q), which empowers federal district courts to review and set aside arbitration awards under the RLA. This Court also has jurisdiction under 28 U.S.C. §§ 1331 and 1337. Jurisdiction is appropriate under § 1331 because this matter arises under the laws of the United States, specifically the RLA. Jurisdiction is likewise appropriate under § 1337, which provides that federal district courts shall have jurisdiction over proceedings arising under any act of Congress, such as the RLA, that regulates commerce. This Court also has jurisdiction over this action pursuant to 28 U.S.C. §§ 2201 and 2202.

2. Personal jurisdiction over Defendant exists because Defendant regularly conducts business and maintains substantial contacts within this judicial district.

3. Venue is proper in this judicial district pursuant to 45 U.S.C. § 153, First (p) and (q), and 28 U.S.C. § 1391(b)(1) and (b)(2), because Defendant resides in and regularly conducts

substantial operations in this judicial district, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in or relate to operations within this judicial district.

## PARTIES

4. Plaintiff IBT is an unincorporated labor organization and is the exclusive bargaining representative, as such term is defined by 45 U.S.C. § 151, Sixth, of the pilots employed by Defendant Southern and who fly aircraft for and on behalf of Southern. The IBT is headquartered at 25 Louisiana Avenue, N.W., Washington, D.C. 20001. This action is brought by the IBT on its own behalf and for and in the interests of all IBT-represented pilots employed in the service of Defendant as well as on behalf of the IBT-represented pilots employed by two separate carriers, Atlas Air, Inc. ("Atlas") and Polar Air Cargo Worldwide, Inc. ("Polar"), whose interests have been adversely impaired by the Award. The IBT is certified by the National Mediation Board ("NMB") as the representative of the pilots employed by Defendant pursuant to a letter dated February 24, 2010, by which the NMB granted the joint request of the pilots' then-representative Southern Air Crew Group ("SACG") and the IBT to transfer the certification from the SACG to the IBT, following a membership-ratified agreement to merge the SACG into the IBT.

5. Plaintiff Local 1224 is an unincorporated labor organization headquartered at 2754 Old State Route 73, Wilmington, Ohio 45177. It is a chartered local union affiliate of the IBT. The IBT has delegated to IBT Local 1224 the exclusive responsibility of providing day-to-day representation to the IBT-represented pilots employed by Defendant.

6. Defendant Southern is an air carrier within the meaning of the RLA, 45 U.S.C. § 181. Defendant engages in world-wide cargo operations for various customers, including DHL, operating a fleet consisting of Boeing 777F and 737-400 aircraft.

## FACTS

### The Current CBA and Its Relevant Provisions

7.     The Union and Defendant are parties to a collective bargaining agreement ("the Southern CBA") covering the rates of pay, rules, and working conditions of the IBT-represented pilots employed by Southern. True and accurate copies of the relevant pages of the Southern CBA are attached as Exhibit 1 and incorporated herein by reference.

8.     The Southern CBA expressly addresses transactions involving a merger between Southern and another certificated air carrier employing crewmembers. Section 1.B.2 of the Southern CBA defines a "merger" as follows:

> a transaction in which the functional departments of the Company (e.g., operations, marketing, finance, human resources, etc.) are integrated with those of another certificated air carrier employing crewmembers, and in such a manner that only one unified corporate entity remains.

(Exhibit 1 at p. 2.) Section 1.B.3 of the Southern CBA provides that, in the "event of a merger," the 2012 Southern CBA

> shall be merged with the merging air carrier's crewmember collective bargaining agreement, if any; if such merged agreement is not completed within nine (9) months from the date an integrated Master Seniority List is submitted to the surviving entity, the parties shall submit all outstanding issues to binding interest arbitration[.]

(Id.)

9.     Section 19 of the Southern CBA delineates the process by which the Union and the Southern pilots submit grievances to Southern, as well as the process by which the Union appeals such grievances to the System Board of Adjustment for adjudication. (Id. at pp. 64-70.) Section 19 does not include any provision for the submission of grievances by Southern either to the Union or to the System Board of Adjustment. (See id.)

10. Section 19.D.2 of the Southern CBA restricts the System Board of Adjustment's jurisdiction to "disputes growing out of grievances or out of the interpretation or application of any of the terms of this Agreement," and specifically deprives the Board of jurisdiction to "changes in hours of employment, rates of compensation, or working conditions." (See Exhibit 1 at p. 67.) Section 19.D.3 further limits the Board to the consideration of those disputes "properly submitted to it when such dispute has not been previously settled in accordance with the terms" of the Southern CBA. (See id.) Section 19.D.8 defines the Board's authority as "to grant, modify or deny the appeal [of a grievance disposition], consistent with the scope of its authority." (Id. at p. 68.)

11. In November 2015, the Union advised Southern of its intent to commence negotiations to amend the Southern CBA and, in a formal RLA Section 6 notice issued in February, 2016, the Union memorialized the parties' agreement to amend the CBA.

12. On or about January 19, 2016, Atlas Air Worldwide Holdings ("AAWW") announced that it had entered into an agreement to acquire Southern Air Holdings, Inc. ("SAHI"), the parent company of Southern and another air carrier, Florida West International Airways ("FWIA"). AAWW completed the acquisition of SAHI and became the ultimate parent of Southern on or about April 7, 2016.

13. AAWW is also the parent company of Atlas and Polar. Atlas and Polar each own and hold their own economic authorities and operating certificates from the United States Department of Transportation and Federal Aviation Administration. Under the RLA, Atlas and Polar constitute a single transportation system for representation purposes. Pursuant to a December 22, 2008 certification from the NMB, the Union represents the pilots who work for Atlas and Polar.

14. The Union, Atlas and Polar are parties to a collective bargaining agreement covering the Atlas-Polar pilots (the "Atlas CBA"). True and accurate copies of the relevant pages of the Atlas CBA are attached as Exhibit 2 and incorporated herein by reference. The Atlas CBA is separate from the Union's collective bargaining agreement with Southern, which covers only the Southern pilots. The Atlas CBA became amendable in September 2016, but was subject to reopener negotiations under RLA Section 6 "no more than two hundred and seventy (270) days prior to" the amendable date. (Exhibit 2 at p. 277.) In December 2015, the Union, Atlas and Polar opened the Atlas CBA and commenced negotiations in early January, 2016.

15. The Union's representative status and responsibilities with respect to the Atlas-Polar pilots are separate from its representative status and responsibilities with respect to the Southern pilots. As such, the Union owes separate duties of fair representation with respect to each of those two pilot groups, *i.e.*, the Atlas-Polar pilots on the one hand, and the Southern pilots on the other.

16. Upon announcing its intent to acquire SAHI, but several months prior to initiating the necessary regulatory processes to effect it, AAWW announced its intent to operationally merge Southern into Atlas while leaving Polar and FWIA as separate carriers under the AAWW corporate umbrella. Based only on that pronouncement, AAWW, a non-party to both the Southern CBA and the Atlas CBA, demanded that the Union and both the Southern pilot group and the Atlas-Polar pilot group cease RLA negotiations to amend the respective Southern and Atlas CBAs. Instead, purportedly in reliance on the two pilot groups' collective bargaining agreements, AAWW insisted that both pilot groups commence negotiations to merge the two pre-existing contracts into one. In so doing, AAWW has sought to circumvent arms-length negotiations under the RLA by going through the motions of engaging in nine months of surface

bargaining with the asserted goal of amalgamating the two pre-existing collective bargaining agreements, but then relying upon the determination of unresolved issues by third-party arbitration to impose terms not agreed upon by the parties. Recognizing that the "merger negotiation" provisions contained in the Southern CBA and the Atlas CBA are triggered only after the presentation to the respective carriers of a single seniority list agreed upon by the two pilot groups, *i.e.*, the Southern pilot group on the one hand and the Atlas-Polar pilot group on the other, AAWW also insisted that the Union and the respective pilot groups immediately commence seniority integration negotiations. Neither AAWW, Southern nor Atlas has any authority to dictate to the Union and the respective pilot groups when and how such a seniority integration process should proceed. Indeed, senior representatives from AAWW, Atlas-Polar have all expressly informed the Union and the respective pilot groups that such seniority integration processes are none of management's business.

### Southern and Atlas Abandon Section 6 Negotiations

17. The Union and the Southern and Atlas-Polar pilot groups refused AAWW's demand that they abandon their respective RLA Section 6 negotiations to amend the Southern CBA and Atlas CBA. In March and April, 2016, respectively, Atlas and Southern refused to engage in further RLA Section 6 negotiations and insisted that the Union and the Atlas-Polar and Southern pilot groups instead commence contractual merger negotiations pursuant to the Atlas CBA and Southern CBA.

18. On April 14, 2016, Atlas filed a management grievance ("the Atlas Grievance") against the Union, alleging that the Union had violated Section 1.F.2.b.i and iii of the Atlas CBA by refusing to engage in negotiations for a joint collective bargaining agreement. Unlike the Southern CBA, the Atlas CBA expressly allows management to file grievances. (Exhibit 2 at p.

121-22.) By letter dated April 20, 2016, the Union nevertheless informed Atlas that it was not required to arbitrate the Atlas grievance because, among other reasons, RLA Section 6 negotiations had already begun, and therefore the Union would not arbitrate the grievance.

19. By letter dated January 24, 2017, Southern purported to submit a grievance ("the Southern Grievance") against the Union for hearing before the System Board of Adjustment established under the Southern CBA. In the Southern Grievance, Southern alleged that the Union had violated Section 1.B.3 of the 2012 Southern CBA by refusing to engage in negotiations for a joint collective bargaining agreement that would cover both the Southern and Atlas pilots. In its Grievance, Southern did not discuss Section 1.B.2's definition of a "merger," nor did it state or otherwise provide evidence to show that it and Atlas had formed "one unified corporate entity." Rather, Southern admitted in its own Grievance that the merger not only had not been effected yet, but would not be for at least another eight months, at the earliest:

> The merger between Atlas and Southern Air is **well-underway.** […] The carriers are working closely with the [FAA] to address the regulatory steps **necessary to obtain a single operating certificate for the carriers**, which **will allow for the full integration of all Operations functions.** To that end, the FAA has issued the carriers their OpSpec A502A, thereby approving the carriers' Transition Plan for the merger of their operations. **Upon completion of the fourth revision cycle in August 2017, the carriers expect to obtain their single FAA operating certificate.**

(Emphases added.)

20. In a February 8, 2017 letter, the Union responded to the purported Southern Grievance, wherein the Union advised Southern that the Southern Grievance was invalid and that therefore the Union would not arbitrate it. The Union noted that the Southern CBA does not allow management to file grievances against the Union. The Union also noted that the Southern Grievance represented an attempt by management to force "proposed changes in hours of employment, rates of pay, compensation, and working conditions on the pilots." As such, it fell

beyond the jurisdiction of the System Board and "must instead be resolved through the RLA dispute resolution procedures set forth in RLA Sections 5 and 6."

21. On February 7, 2017, before it even received a response from the Union with respect to its purported Grievance, Southern joined Atlas in bringing suit against the Union in the United States District Court for the Southern District of New York to compel the Union to arbitrate their respective management grievances.

22. On March 13, 2018, in *Atlas Air, Inc. and Southern Air, Inc. v. International Brotherhood of Teamsters,* 293 F. Supp. 3d 457 (S.D.N.Y.) ("the March 2018 Decision"), Judge Katherine B. Forrest ruled that the parties' disputes must be resolved by the respective System Boards of Adjustment under the Atlas CBA and Southern CBA. The Union appealed that decision to the United States Court of Appeals for the Second Circuit and a decision on that case is pending. If the Second Circuit reverses the district court's decision, then the two resulting, separate arbitrations discussed below that were conducted by the Southern and Atlas System Boards of Adjustment, as well as any and all rulings issued by the district court, will be null and void.

### The Atlas Grievance Arbitration Proceedings

23. The Atlas Grievance was heard by the Atlas System Board of Adjustment, on which Arbitrator George Nicolau served as Neutral Member, on October 24, 25, and 26, 2018, in New York, New York. The parties submitted post-hearing briefs, and a decision is pending.

### The Southern Grievance Arbitration Proceedings and Opinion

24. Southern's purported Grievance was heard by a three-person System Board of Adjustment ("the System Board"), on which Arbitrator Richard I. Bloch ("Arbitrator Bloch") served as the Neutral Member, on October 16, 17, and 18, 2018, in New York, New York. On

9

October 11, 2018, the Union filed a Motion to Dismiss the Southern Grievance with the System Board on the ground that, because the Southern CBA does not allow for the filing of a management grievance, the System Board lacked jurisdiction under the Southern CBA to adjudicate the Southern Grievance. The System Board reserved a ruling upon the Union's Motion to Dismiss until after the conclusion of the proceedings and the parties' post-hearing submissions.

25.     Following the submission of post-hearing briefs by both parties, on June 6, 2019, Arbitrator Bloch issued his Opinion and Award. A true and accurate copy of the Award is attached as Exhibit 3 and incorporated herein by reference. In his Award, Arbitrator Bloch found that Southern was entitled to pursue a "management grievance," despite the lack of any contractual provision allowing it to do so and despite the fact that Southern admittedly had never previously attempted to file a management grievance. Further, despite abundant evidence that Southern and Atlas had not merged into "one unified corporate entity," as required under Section 1.B.2 of the Southern CBA, Arbitrator Bloch sustained the Southern Grievance. Finally, Arbitrator Bloch ordered the Union to produce an integrated seniority list combining the seniority lists of the Southern pilots with those of the Atlas-Polar pilots, whose seniority and other rights and responsibilities are determined by their own collective bargaining agreement, and whose dispute over the overarching issue of whether they are required to engage in contractual merger negotiations under the Atlas CBA rather than RLA Section 6 negotiations remains unresolved by the Atlas System Board of Adjustment chaired by Arbitrator Nicolau and the Second Circuit. Union-appointed Board Member Daniel Katz submitted a dissenting opinion ("the Dissent"), which is also appended to and incorporated as part of the Award. A true and accurate copy of the Dissent is attached as Exhibit 4 and incorporated herein by reference.

**Arbitrator Bloch Exceeds His Jurisdiction by Applying the RLA
and Inventing a Management Grievance Process**

26.     In finding that Southern was entitled to pursue a management grievance, Arbitrator Bloch exceeded the scope of his authority by inventing a management grievance process which does not exist in the Southern CBA, and by venturing far beyond the four corners of the contract, expressly relying upon Section 204 of the RLA, 45 U.S.C. § 184, to reach that result. In this regard, Arbitrator Bloch conceded, "It is true the Section 19 grievance process is described in terms that uniformly speak to complaints by the Union." (See Exhibit 3 at p. 8.) Although Arbitrator Bloch also acknowledged that "the task of this Board is to interpret the private contract, not the public law," (see id. at p. 12), he then proceeded to "interpret" the RLA and improperly graft that statutory interpretation into Section 19 of the Southern CBA. Specifically, while noting that "even if the current matter cannot … be litigated under Section 19 ('Grievances')" (id. at p. 15), he concluded that "the broad statutory RLA presumptions toward access to the grievance procedure are important" (id. at p. 17), and held that the Southern System Board's "review of the CBA in its entirety persuades us that these parties intended broader access than may be inferred from reading only Section 19, and that, therefore, Southern could properly grieve" (id.).

27.     While Arbitrator Bloch professed to have reached his conclusion enabling Southern to file a management grievance under the Southern CBA upon a "review of the CBA in its entirety" (see id. at p. 17), he did not cite any provision other than Section 19, which he already had acknowledged "uniformly speaks to complaints by the Union" (see id. at p. 12). Further, Arbitrator Bloch did not refer to any evidence that the parties actually had "intended" to give Southern access to the grievance process. Nor was any such evidence produced at the hearing, because it simply does not exist. The lack of express contractual language permitting a

11

management grievance, together with the lack of any extrinsic evidence of the parties' intent, makes clear that Arbitrator Bloch's conclusion was driven by his reliance upon the supposed "broad statutory RLA presumptions toward access to the grievance procedure." (See id. at p. 17.) In so doing, Arbitrator Bloch acted outside of his jurisdiction in interpolating his view of an RLA statutory imperative into the parties' collective bargaining agreement. His holding thus failed to draw "its essence" from the collective bargaining agreement, as required under *Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597 (1960). And, in so doing, he also exceeded his authority by changing the working conditions of the Southern pilots, an action that is expressly prohibited by Sections 19.D.2 and 19.D.3 of the Southern CBA.

### Arbitrator Bloch Exceeded His Authority by Ordering a Remedy That Applies to a Grievance and a Pilot Group Over Which He Lacks Jurisdiction

28. Arbitrator Bloch ordered the Union to produce an integrated seniority list comprising pilots who are employed by both Atlas and Southern, within 45 days from the date his Opinion issued. (Exhibit 3 at p. 23.) In so doing, Arbitrator Bloch acknowledged that "There is no evidence in the record, nor is it likely anyone really knows, how long it will take to generate the ISL [integrated seniority list]." (See id.) Moreover, Arbitrator Bloch, in the Decision, acknowledged that the Southern CBA contains "no specified point at which the Union must supply the ISL and join with the Company to negotiate a JCBA [joint collective bargaining agreement]." (See id. at p. 22.) Arbitrator Bloch further emphasized that the Southern CBA contains "no identifiable 'starting line' marker" (see id. at p. 23) for the attachment of any duty of the Union and the Southern pilot group to begin what he characterized as "the difficult, at times daunting, and almost always thankless task of producing an ISL and joining with Southern in negotiating a JCBA" (see id. at pp. 22-23).

29. In contriving this remedy, Arbitrator Bloch also ignored the fact that the Atlas pilot group is not a party to the present proceedings, nor is the Atlas CBA within the purview of the Southern System Board.

30. The issue of whether the Atlas-Polar pilots must proceed with negotiations with Atlas, the Southern pilot group and a non-signatory carrier, *i.e.*, Southern, but not with one of the carriers that is indeed party to the Atlas CBA, *i.e.*, Polar, is the subject of a separate System Board of Arbitration established under the Atlas CBA, and can only be decided by the Atlas CBA System Board of Adjustment. The Southern System Board lacks jurisdiction to consider and adjudicate that issue, as it arises under the Atlas CBA, not the Southern CBA.

30. Any obligation of the Union and the Atlas-Polar pilots to engage in a seniority integration process with the Southern pilots is subject solely to the jurisdiction of the Atlas CBA-established System Board of Adjustment.

31. The Atlas Grievance has been heard by the Atlas System Board of Adjustment and remains under submission.

32. In sum, the Southern System Board of Adjustment and the Atlas System Board of Adjustment are separate entities, established by separate collective bargaining agreements, applicable to separate pilot groups, and limited to the resolution of grievances arising under their respective collective bargaining agreements that are properly submitted to them.

33. The Southern Decision's remedy is arbitrary and it fails to draw its essence from the Southern CBA, because: (a) it imposes obligations on the Union and the non-party Atlas-Polar pilot group; and, (b) the Union and Atlas-Polar pilots are covered by a separate collective bargaining agreement, with a separate system board of adjustment that is the only entity with

13

jurisdiction to decide whether the Atlas-Polar pilots are contractually required to engage in contractual merger negotiations and seniority integration with the Southern pilots.

34. By crafting a remedy that imposes obligations on the part of the Union and the Atlas-Polar pilots, Arbitrator Bloch's Decision usurps the jurisdiction of the Atlas System Board, which has under submission a dispute concerning the rights and obligations of the Union and the Atlas-Polar pilots under the Atlas CBA.

35. By crafting a remedy that imposes obligations on the part of the Union and the Atlas-Polar pilots, Arbitrator Bloch's Decision denies both the Union and the Atlas-Polar pilots of their due process rights.

36. The Atlas-Polar pilots are not obligated to and will not abide by the remedy imposed on them by Arbitrator Bloch in the Southern Decision. In this regard, the Atlas-Polar pilots are not obligated to take part in any contractual merger negotiations or seniority integration with the Southern pilots unless and until they are ordered to do so by the Atlas System Board of Adjustment and the Second Circuit affirms the decision of the United States District Court for the Southern District of New York compelling them to arbitrate those issues to the Atlas System Board of Adjustment. As a result, and in light of the pending circumstances, The Southern Decision and its remedy improperly place the Union in a position in which the Union would be required to extinguish the Atlas-Polar pilots' rights and therefore breach its duty of fair representation to them.

## CAUSES OF ACTION

### COUNT I

37. Plaintiffs incorporate by reference as if fully set forth herein paragraphs 1 through 36 of this Complaint.

38. The Award of Arbitrator Bloch finding that Southern had the right to pursue a management grievance and submit its issue directly to the Southern-IBT System Board fails to conform with, and/or confine itself to, matters within the scope of the System Board's jurisdiction.

39. The Award of Arbitrator Bloch to set aside the mandatory RLA Section 6 process under the Southern CBA fails to conform with, and/or confine itself to, matters within the scope of the System Board's jurisdiction, fails to draw its essence from the Southern CBA, and violates the due process rights of the Union and the Southern pilots.

## COUNT II

40. Plaintiffs incorporate by reference as if fully set forth herein paragraphs 1 through 39 of this Complaint.

41. The Award of Arbitrator Bloch ordering a remedy applicable to Atlas-Polar pilots who are covered under a separate collective bargaining agreement, and pertaining to a matter subject to a separate System Board's jurisdiction, fails to conform with, and/or confine itself to, matters within the scope of the Southern System Board's jurisdiction, fails to draw its essence from the Southern CBA, and violates the due process rights of the Union and the pilots in Atlas-Polar bargaining unit.

## COUNT III

42. Plaintiffs incorporate by reference as if fully set herein paragraphs 1 through 41 of this Complaint.

43. The Award of Arbitrator Bloch fails to comply with, and violates, the requirements of the Railway Labor Act.

## COUNT IV

44. The allegations of paragraphs 1 through 43 are incorporated by reference pursuant to Fed. R. Civ. P. Rule 10(c).

45. The Southern Decision and any effort by the Company to impose and enforce the Decision's remedy upon the Atlas-Polar pilots violates RLA Section 204, 45, U.S.C. § 184, as well as the status quo procedures of RLA Sections 2, First, Seventh and Section 6 of the RLA, 45 U.S.C. § 152, First, 152, Seventh, and § 156. As such, there is no obligation on the part of Union to show irreparable injury because courts may enjoin a violation of the status quo pending completion of the required RLA Section 6 procedures, without the customary showing of irreparable injury.

46. In addition to the irreparable injury to the statutory purposes and machinery of the RLA, any attempted enforcement of the Southern Decision will injure the Union and the Atlas-Polar it represents in ways that cannot be measured accurately in terms of money, either as to extent or amount.

47. Any effort to enforce the Southern Decision will have the proximate effect of compelling the Union to extinguish the contractual rights of the Atlas-Polar pilots regarding a dispute with their company over whether they are required to engage in contractual merger negotiations for a joint collective bargaining agreement with the Southern pilots and engage in seniority integration negotiations with the Southern pilots, thereby undermining the Union's status as the Atlas-Polar pilots' collective bargaining representative and subjecting the Union to potential liability for breaching its duty of fair representation to the Atlas-Polar pilots. Any such effort to enforce the Southern Decision, moreover, is contrary to the public interest in stable labor relations and the maintenance of agreements.

48. The injury that would be suffered by the public, the Union and the Atlas-Polar pilots would be irreparable and could not be recovered in an action at law or in administrative or contractual proceedings.

49. For all the foregoing reasons, Plaintiffs and the Atlas pilots are without an adequate remedy at law and will suffer serious, substantial and irreparable injury unless enforcement of the Southern Decision is enjoined. The public interest in the RLA and interstate commerce requires that injunctive relief issue.

50. Southern will not be injured by the grant of injunctive relief in this case.

## COUNT V

51. Plaintiffs incorporate by reference as if fully set herein paragraphs 1 through 50 of this Complaint.

52. The Union, as representative of the Atlas-Polar pilots, and the Atlas-Polar pilots are not subject to the jurisdiction of the Southern System Board of Adjustment and the Southern Decision does not apply to them with respect to their obligations under the Atlas-Polar CBA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter an Order:

A. Vacating, setting aside, and declaring null and void the Award of the Southern System Board;

B. To the extent required, issuing such orders to Arbitrator Bloch and the Southern System Board as may be necessary to effectuate the Court's remedy;

C. Declaring that the Union and the Atlas-Polar pilots legally need not follow the remedy set forth in the Southern Decision because the Southern System Board of Adjustment does not apply to them with respect to their rights and obligations

        under the Atlas-Polar CBA and the Southern Decision improperly imposes obligations on them that are arise, if at all, only from the Atlas-Polar CBA;

D.    Granting preliminary and permanent injunctive relief prohibiting Southern from enforcing the Southern Decision against the Atlas-Polar pilots and Union in its capacity as the exclusive representative of the Atlas-Polar pilots;

E.    Awarding costs and fees to Plaintiffs; and

F.    Granting the Union such other and further relief as the Court deems just and proper.

Dated: June 28, 2019

_/s/_____
Edward M. Gleason
(D.C. Bar No. 429325)
LAW OFFICE OF
 EDWARD GLEASON, PLLC
910 17th Street, N.W., Suite 800
Washington, DC 20006
Ph: (703) 703-608-7880 - mobile
egleason@gleasonlawdc.com

Stephanie Spanja
DOLL, JANSEN & FORD
111 West First Street, Suite 1100
Dayton, Ohio 45402
Ph: (937) 461-5310
sspanja@djflawfirm.com

Gillian Costello
SPIVAK LIPTON LLP
1700 Broadway, 21st Floor
New York, New York 10019
Ph: (212) 765-2100
gcostello@spivaklipton.com

*Counsel for Plaintiffs*