# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ATLAS AIR, INC.**, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AIRLINE DIVISION**, *et al.*, <br><br> Defendants. | Case No. 19-cv-3223 (CRC) |
| **INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AIRLINE DIVISION**, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **SOUTHERN AIR, INC.**, <br><br> Defendant. | Case No. 19-cv-1948 (CRC) |
| **INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AIRLINE DIVISION**, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **ATLAS AIR, INC.**, <br><br> Defendant. | Case No. 19-cv-2723 (CRC) |

## MEMORANDUM OPINION

The merger between Southern Air, Inc. ("Southern") and Atlas Air, Inc. ("Atlas") has been experiencing turbulence. The two airlines have been waiting since 2016 for the union representing both carriers' pilots—the International Brotherhood of Teamsters ("IBT")—to begin negotiations to integrate the two airlines' seniority lists and collective bargaining

agreements. After the airlines successfully compelled arbitration of the parties' disputes, both airlines' arbitration boards issued awards in favor of the airlines. See Janger Decl., Exh. 11 ("Southern Award"); id., Exh. 12 ("Atlas Award").[1] The union then sued the airlines seeking to vacate both arbitration awards. The Court dismissed those suits in January 2020 after concluding that the awards were consistent with the respective collective bargaining agreements and federal law. See Int'l Bhd. of Teamsters v. Southern Air, Inc. ("Southern Air I"), No. 19-cv-1948, 2020 WL 435428 (D.D.C. Jan. 28, 2020) (Cooper, J.); Int'l Bhd. of Teamsters v. Atlas Air, Inc. ("Atlas Air I"), No. 19-cv-2723, 2020 WL 435353 (D.D.C. Jan. 28, 2020) (Cooper, J.).

The proceedings now approach their final descent: The airlines seek summary judgment to enforce the arbitration awards, while the union moves to vacate the judgments dismissing their challenges to the awards. Finding no basis to depart from its rulings in Southern Air I and Atlas Air I and no remaining disputes of material fact, the Court will enter summary judgment in the airlines' favor and deny the union's cross-motion for partial summary judgment and motions to vacate the Court's prior rulings. Consistent with the terms of both arbitration awards, the union shall—within 45 days of today's opinion and order—present both airlines with an integrated seniority list and thereafter commence joint collective bargaining agreement negotiations and.

I. **Background**

The Court recounts only the facts necessary to decide the instant motions. Readers may refer to the factual background laid out in the Court's prior opinions for additional detail. See Southern Air I, 2020 WL 435428, at *1–2; Atlas Air I, 2020 WL 435353, at *1–2.

---

[1] Unless otherwise noted, citations are to filings in the airlines' action to enforce the arbitration awards, Atlas Air, Inc. v. Int'l Bhd. of Teamsters, No. 19-cv-3223.

In January 2016, the parent company of Atlas Air entered into an agreement to acquire the parent company of Southern Air. It subsequently announced a plan to operationally merge Southern Air into Atlas Air. Atlas Award 1. Each airline has a collective bargaining agreement ("CBA") with IBT—the exclusive collective bargaining agent of each airline's pilots—that governs the pilots' rates of pay, rules, and working conditions. See Carlson Decl., Exh. 1 ("Atlas CBA"); id., Exh. 2 ("Southern CBA"). Invoking the merger provisions in each airline's CBA, the airlines demanded that IBT begin negotiations to develop an integrated seniority list ("ISL") and joint collective bargaining agreement ("JCBA").[2] Atlas Award 2; Southern Award 2.

IBT refused these demands, prompting management to submit grievances to their respective arbitration boards in April 2016 and January 2017. Southern Award 3; Atlas Award 2. IBT responded that the disputes were not arbitrable. Southern Award 3; Atlas Award 2. The airlines then obtained an order compelling arbitration from the United States District Court for the Southern District of New York, which was affirmed by the Second Circuit. Atlas Air, Inc. v.

---

[2] The Southern CBA provided that "[i]n the event of a merger, this Agreement shall be merged with the merging air carrier's crewmember collective bargaining agreement." Southern CBA § 1.B.3. "[I]f such merged agreement is not completed within nine (9) months from the date an integrated Master Seniority List is submitted to the surviving entity, the parties shall submit all outstanding issues to binding interest arbitration." Id.

The Atlas CBA provided that in the event "the Company acquires another air carrier and the Company decides there will be a complete operational merger between the Company and such other air carrier, or if the Company decides there will be a complete operational merger between the Company and an affiliated air carrier, the following shall apply" where the same union represents the crewmembers of the acquisition target. Atlas CBA § 1.F.2. First, "the Union's Merger Policy shall be utilized to integrate the two seniority lists." Id. § 1.F.2.a.i. Second, "the parties shall on a timely basis begin negotiations to merge the two pre-integration collective bargaining agreements into one agreement." Id. § 1.F.2.b.iii. "If," consistent with the analogous provision in the Southern CBA, "a merged agreement has not been executed within nine (9) months from the date that the Union presents to the Company a merged seniority list . . . , the parties shall jointly submit the outstanding issues to binding interest arbitration." Id.

3

Int'l Bhd. of Teamsters, 293 F. Supp. 3d 457 (S.D.N.Y. 2018), aff'd, 943 F.3d 568 (2d Cir. 2019).

The parties proceeded to arbitration. The Southern System Board of Adjustment ("Southern Board") granted the Southern grievance in June 2019, Southern Award 24, and the Atlas System Board of Adjustment ("Atlas Board") granted the Atlas grievance in August 2019, Atlas Award 13. Both awards ordered the union to—within 45 days of each order—present an integrated seniority list to management and thereafter begin negotiations for a joint collective bargaining agreement. See Southern Award 23; Atlas Award 12.

In June and September 2019, the union filed petitions to vacate the arbitration awards in this Court. See Compl., Southern Air I, No. 19-cv-1948 (D.D.C. June 28, 2019); Compl., Atlas Air I, No. 19-cv-2723 (D.D.C. Sept. 11, 2019). The airlines subsequently moved to dismiss the petitions under Federal Rule of Civil Procedure 12(b)(6). In October 2019, the airlines separately sued the union to enforce the arbitration awards and filed a motion for summary judgment that raised the same issues that they had raised in their motions to dismiss the union's petitions. To streamline resolution, the Court held a status conference in all three matters on October 31, 2019, at which it stayed briefing in the airlines' enforcement action while it considered the union's petitions to vacate. See Minute Order (Oct. 31, 2019). On January 28, 2020, the Court dismissed both of the union's petitions to vacate the arbitration awards. See Southern Air I, 2020 WL 435428, at *12; Atlas Air I, 2020 WL 435353, at *10.

The union filed motions to vacate those judgments under Federal Rule of Civil Procedure 59(e). Meanwhile, the parties resumed summary judgment briefing in the airlines' action to enforce the arbitration awards. See Minute Order (Feb. 3, 2020). The parties' cross-motions for

4

summary judgment in the enforcement action and the union's motions to vacate the Court's prior dismissal rulings involve the same issues, so the Court will consider them together.

## II. Legal Standards

The Railway Labor Act ("RLA") commits so-called "minor disputes"—*i.e.*, disputes "about how to interpret an existing collective bargaining agreement, like the meaning of a term or whether the agreement permits a certain action"—to an exclusive mandatory grievance and arbitration procedure. Atlas Air, Inc. v. Int'l Bhd. of Teamsters, 928 F.3d 1102, 1108 (D.C. Cir. 2019) (citing Elgin, J. & E. Ry. Co. v. Burley, 325 U.S. 711, 723 (1945)). Judicial review of arbitration awards issued under the RLA is limited to grounds of: (1) failure to comply with the RLA; (2) failure to confine the decision to matters within the board's jurisdiction; (3) fraud or corruption; and (4) contravention of law and public policy. See 45 U.S.C. § 153 First (q); Union Pac. R.R. Co. v. Sheehan, 439 U.S. 89, 93 (1978); Nat'l R.R. Passenger Corp. v. Fraternal Order of Police, Lodge 189 Labor Comm., 855 F.3d 335, 338 (D.C. Cir. 2017).

Cross-motions for summary judgment are the typical vehicle to resolve "suits to enforce arbitration awards," since "[l]egal issues tend to predominate." United Transp. Union v. CSX Transp. Inc., No. 04-cv-227, 2006 WL 3198811, at *1 (S.D. Ind. July 20, 2006); see also Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv., 789 F.2d 1, 4 (D.C. Cir. 1986) (resolving the validity of an arbitration award based on cross-motions for summary judgment). To defeat the airlines' motion for summary judgment to enforce the arbitration awards, the union must establish a genuine dispute of material fact, *i.e.*—a "dispute[] over facts that might affect the outcome of the suit under the governing law"—with respect to one of the aforementioned grounds for judicial review. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Fed. R. Civ. P. 56.

The union has also filed motions under Federal Rule of Civil Procedure 59(e) to alter or amend the Court's dismissals of its suits to vacate the arbitration awards. "A Rule 59(e) motion 'is discretionary' and need not be granted unless the district court finds that there is an 'intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (quoting Nat'l Trust v. Dep't of State, 834 F. Supp. 453, 455 (D.D.C. 1993)).

The union raises the same legal issues in its Rule 59(e) motions and combined partial cross-motion for summary judgment and opposition. Its basic point seems to be that—since the Court now has the full record before it in the enforcement action—the Court should consider that same record in determining whether reconsideration of its prior dismissal rulings is necessary to correct a clear legal error or prevent manifest injustice. See IBT's Mot. to Alter J. ¶ 4, Atlas Air I, No. 19-cv-2723, ECF No. 23; IBT's Mot. to Alter J. ¶ 4 & n.1, Southern Air I, No. 19-cv-1948, ECF No. 21. Setting aside the differences in what the Court may consider in deciding a motion to dismiss versus a motion for summary judgment, it takes the union's point. Even so, the bar for finding "clear error" under Rule 59(e) is higher than that for granting summary judgment under Rule 56. See, e.g., Cable News Network, Inc. v. FBI, 401 F. Supp. 3d 187, 193 (D.D.C. 2019) (describing "clear error" as "the type of mistake that is 'dead wrong'" or that "strikes readers as erroneous 'with the force of a five-week-old, unrefrigerated dead fish'" (quoting Lardner v. FBI, 875 F. Supp. 2d 49, 53 (D.D.C. 2012); Mohammadi v. Islamic Republic of Iran, 947 F. Supp. 2d 48, 78 (D.D.C. 2013))). Accordingly, if the Court grants summary judgment to the airlines in the enforcement action, it may also deny the union's motions to vacate the Court's prior dismissal rulings.

### III. Analysis

All three of the union's motions double down on a single objection: the arbitration awards fail to honor the pilots' rights to the Allegheny-Mohawk Airline Merger Labor Protective Provisions ("Allegheny-Mohawk LPPs") during seniority list integration.[3] On this basis alone,[4] the union maintains, the Court must decline to enforce the awards and reconsider its prior dismissal rulings. The union's argument fails to take flight.

A. The Award's Compliance with the McCaskill-Bond Amendment

The union first contends that the Atlas Award runs afoul of the McCaskill-Bond Amendment to the Federal Aviation Act. See 49 U.S.C. § 42112 Note Pub. L. No. 110-161, div. K, § 117 (2007). As the Court has explained, "[t]hat statute 'requires carriers to observe sections

---

[3] The union did not raise McCaskill-Bond in its petition to vacate the Southern Award. See Compl., Southern Air I, 19-cv-1948. To the extent that the union now contends that the Court should revisit its ruling in Southern Air I because the Southern Award was inconsistent with McCaskill-Bond, see IBT's Mot. to Alter J. ¶ 5, Southern Air I, No. 19-cv-1948, it is well established that Rule 59(e) motions should "not [be] granted if the court suspects the moving party is using the motion to assert arguments that could have been raised prior to final judgment," Int'l Painters & Allied Trades Indus. Pension Fund v. Design Techs., 254 F.R.D. 13, 18 (D.D.C. 2008) (internal quotation marks omitted).

To the extent that the union contends that it is entitled to summary judgment declining to enforce the Southern Award because it violates McCaskill-Bond, see Pls. Opp. to MSJ 8–13, the Court rejects that argument for the same reasons, as explained below, that it rejects that argument with respect to the Atlas Award.

[4] The union contends, for the first time in its reply in support of its motion to vacate Southern Air I, that the Southern Board exceeded its jurisdiction under the Southern CBA by directing the union to provide an ISL to an entity other than the "surviving entity." IBT's Reply 3–4 & n.3, Southern Air I, 19-cv-1948 (quoting Southern CBA § 1.B.3). IBT did not raise this argument in the prior proceeding, see Int'l Painters, 254 F.R.D. at 18 (prohibiting use of a Rule 59(e) "motion to assert arguments that could have been raised prior to final judgment"), let alone its opening brief to support its Rule 59(e) motion, see, e.g., Williams v. The BluePRINT, LLC, 952 F. Supp. 2d 209, 213 n.1 (D.D.C. 2013) ("Having waited to advance this argument until his reply, [the plaintiff] has waived it."). It therefore provides no basis for the Court to revisit its dismissal ruling in Southern I.

3 and 13 of the [Allegheny-Mohawk LPPs]' with respect to the integration of covered employees for certain mergers and acquisitions." Atlas Air I, 2020 WL 435353, at *9 (quoting Flight Attendants in Reunion v. Am. Airlines, Inc., 813 F.3d 468, 472 (2d Cir. 2016)). The Court concluded that, although the merger at issue was otherwise a protected transaction under McCaskill-Bond, it fell within the statute's explicit carve-out for transactions in which "the same collective bargaining agent represents the combining crafts or classes at each of the covered air carriers." Id. (quoting 49 U.S.C. § 42112 Note § 117(a)(1)). In such circumstances, the statute expressly provides that the "collective bargaining agent's internal policies regarding integration, if any, will not be affected by and *will supersede* the requirements of this section." Id. (quoting 49 U.S.C. § 42112 Note § 117(a)(1)) (emphasis added). Because it was undisputed that IBT represented both pilot groups, the Court thus held that "[t]he [Atlas] Board's conclusion that the Allegheny-Mohawk procedures were not required under the CBA for the seniority list integration was . . . entirely consistent with the McCaskill-Bond Amendment." Id.

A straightforward application of issue preclusion would entitle the airlines to summary judgment. See Martin v. Dep't of Justice, 488 F.3d 446, 454 (D.C. Cir. 2007) (An issue may not be re-litigated if: (1) "the same issue now being raised [was] contested by the parties and submitted for judicial determination in the prior case"; (2) "the issue [was] actually and necessarily determined by a court of competent jurisdiction in that prior case"; and (3) "preclusion in the second case [does] not work a basic unfairness to the party bound by the first determination."). Here, the union raised its McCaskill-Bond objection in the prior proceeding, and the Court squarely rejected it.

The union urges the Court, however, to reevaluate its prior ruling in light of purportedly new evidence showing that it has no integration policy. IBT's Opp. to MSJ 10. That evidence

8

consists of testimony at the Atlas arbitration hearing from Daniel Wells, then-President of IBT Local Union No. 1224, agreeing that "the IBT airline division d[id] not have a *written* merger[] seniority . . . policy comparable to the ALPA merger policy, which requires interest arbitration on the seniority list if there's a merger." Id. at 5–6 (quoting Exh. 1 at 670:9–21) (emphasis added).[5]

But, nothing in McCaskill-Bond indicates that a union's integration policy must be *written*. Mr. Wells went on to testify that IBT had used a simple "date-of-hire approach" in the past, that a "shortcut procedure" for integration had been proposed for this transaction, and that "the airline division does in fact now have a merger policy." Janger Decl., Exh. 6 ("Wells Testimony") at 669:17–670:6, 671:10–24, 710:12–711:8.[6] Such a policy, even if informal,

---

[5] Although it does not say as much, the union could be heard to raise an objection that preclusion would "work a basic unfairness" to it because "the prior proceedings were seriously defective," given the absence of this "new" evidence. Southern Air I, 2020 WL 435428, at *7 (quoting Canonsburg Gen. Hosp. v. Burwell, 807 F.3d 295, 306 (D.C. Cir. 2015)). The Court is wary of that position, however, because the union was free to introduce—and Atlas in fact did introduce—evidence of Mr. Well's testimony at the motion to dismiss stage. See Janger Decl., Exh. D at 670–71, Atlas Air I, No. 19-cv-2732.

With respect to its petition to vacate the *Southern* Award, the union maintains that it could not have used Mr. Wells's testimony at the Atlas Board hearing to refute Southern's motion to dismiss. IBT's Mot. to Alter J. ¶ 4 n.1, Southern Air I, No. 19-cv-1948. But, "[w]hen reviewing an arbitral award, a court may only consider the decision and the record *before the arbitrator*." Decorative Panels Int'l, Inc. v. Int'l Ass'n of Machinists & Aerospace Workers Local Lodge W-260, 996 F. Supp. 2d 559, 565 (E.D. Mich. 2014) (emphasis added). The Court thus fails to see how testimony that was not presented to the *Southern* Board bears on whether its award was erroneous.

In any case, the Court need not decide whether its prior rulings preclude a contrary decision here because it rejects the union's McCaskill-Bond objections—even considering this "new" evidence of Mr. Well's testimony—on the merits.

[6] Mr. Well's exact response was that "the answer is no" to whether the union had a written merger integration policy "[a]t the time this letter was written"—which was in 2016. Wells Testimony 669:17–670:4. Mr. Wells immediately clarified that "the airline division does in fact now have a merger policy but . . . [it] does not apply to us because it came into effect after

9

suffices under McCaskill-Bond. See, e.g., Flight Options, LLC v. Int'l Bhd. of Teamsters, Local 1108, 863 F.3d 529, 543 (6th Cir. 2017), cert. denied, 138 S. Ct. 941 (2018) (finding that a transaction complied with McCaskill-Bond where the union "followed an *unwritten* internal merger policy") (emphasis added).[7]

---

this occurred." Id. 670:5–8. The Court is not sure why the union's current integration policy could not be applied to this transaction under McCaskill-Bond, so long as it is the union's "internal polic[y] regarding integration." 49 U.S.C. § 42112 Note § 117(a)(1).

[7] According to IBT, Flight Options held that "McCaskill-Bond is superseded only if the contractual seniority procedures in question afford employees the Section 3 and 13 protections." IBT's Reply 11, Atlas Air I, No. 19-cv-2723. Flight Options did not so hold. There, the air carriers asserted that they had an independent statutory obligation under McCaskill-Bond to ensure a "fair and equitable" seniority list integration. In evaluating that contention, the Sixth Circuit agreed with the carriers "that McCaskill-Bond applies when there is a 'transaction for the combination of multiple air carriers into a single air carrier,' and that generally this means that Allegheny–Mohawk applies to the pilot seniority integration." Flight Options, 863 F.3d at 540 (quoting 49 U.S.C. § 42112 Note § 117(b)(4)(A), (a)) (internal citation omitted). The Sixth Circuit went on to note, "however," that the carriers had "overlook[ed]" the statute's provision "that when, as here, the 'same collective bargaining agent represents the combining crafts or classes at each of the covered air carriers, that collective bargaining agent's internal policies regarding integration, if any, will not be affected by and will supersede the requirements' of McCaskill–Bond." Id. (quoting 42 U.S.C. § 42112 Note § 117(a)(1)). "Thus," the Sixth Circuit squarely held, "as the collective-bargaining agent for the pilots of both carriers, the Union's internal policies regarding integration *supersede* the requirements of McCaskill-Bond." Id.

Flight Options did separately analyze the second carve-out in McCaskill-Bond, which provides that

> the requirements of any collective bargaining agreement that may be applicable to the terms of integration involving covered employees of a covered air carrier shall not be affected by the requirements of this section as to the employees covered by that agreement, *so long as those provisions allow for the protections afforded by sections 3 and 13 of the Allegheny-Mohawk provisions*.

49 U.S.C. § 42112 Note § 117(a)(2) (emphasis added). The CBA at issue in Flight Options separately provided as "terms of integration" that "the seniority integration must be 'fair and equitable' and either section 13 or an alternative agreed-upon dispute-resolution process must be provided." Flight Options, 863 F.3d at 540. It was in the context of interpreting that distinct statutory carve-out and CBA provision that the Sixth Circuit held that "because the 2010 CBA commits the integration process to the Union and continues to allow employees the protections

10

To the extent that the union contests the sufficiency of Mr. Well's testimony to establish the existence of *its own* merger policy, more "[i]nformation about" the *union's* internal merger policy "is, if anything, within [its] exclusive control." Green v. Am. Broad. Cos., 647 F. Supp. 1359, 1364 (D.D.C. 1986). The union therefore "may not invoke the shelter of Rule 56(f) to excuse [its] own lack of diligence in demonstrating to the Court that there is indeed a genuine issue of fact with respect to" the existence of its merger policy. Id.; see generally Weiss v. La Suisse, Societe D'Assurances Sur La Vie, 293 F. Supp. 2d 397, 408 (S.D.N.Y. 2003) ("A party cannot withhold evidence *in his possession* when his opponent makes a motion for summary judgment and then introduce the missing evidence at trial." (emphasis added)). In any case, the Court is certainly in no position to question the Atlas Board's interpretation of Mr. Well's testimony before it. See United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 36 (1987) ("The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on *errors of fact* . . . ." (emphasis added)).

To the extent that the Union challenges the "shortcut" nature of the integration policy, *i.e.*, that it did not allow for interest arbitration, nothing in McCaskill-Bond requires the union's policy to contain protections comparable to the Allegheny-Mohawk LPPs. IBT's Opp. to MSJ

---

of sections 3 and 13 of Allegheny-Mohawk, the district court properly concluded that the Carriers do not have a distinct McCaskill-Bond obligation." Id. The Sixth Circuit did not purport to announce a "test" that a union's "internal policies regarding integration"—as opposed to a CBA's "the terms of integration"—had to provide for the Allegheny-Mohawk LPPs.

If anything, the express inclusion in § 117(a)(2) of the requirement that the "provisions allow for the [Allegheny-Mohawk LLPs]" indicates that no such requirement applies to the union's "internal policies regarding integration" in § 117(a)(1). If Congress wanted to ensure that a union's "internal policies regarding integration" allowed for the Allegheny-Mohawk LPPs, it knew how to say so. See Nat'l Fed'n of Indep. Bus. v. Sebelius, 567 U.S. 519, 544 (2012) ("Where Congress uses certain language in one part of a statute and different language in another, it is generally presumed that Congress acts intentionally.").

11

7–8; Wells Testimony 671:2–7.  As explained, McCaskill-Bond expressly exempts transactions in which the same union represents both pilot groups from the Allegheny-Mohawk LPPs.  49 U.S.C. § 42112 Note § 117(a)(1).  Instead, that union's "internal policies regarding integration, if any"—whatever those policies are—"*will supersede* the requirements of [the statute]."  Id. (emphasis added).  Accordingly, the union's objection that the Atlas Award's 45-day deadline does not give the parties enough time to employ the Allegheny-Mohawk LPPs in crafting an ISL, see, e.g., IBT's Opp. to MSJ 21; Katz Decl. ¶¶ 6–16, provides no basis for declining to enforce the award.  The statute, by its terms, does not require such compliance.

B. The Award's Compliance with the CBA

The union also maintains that the Atlas Board "effectively rewrote" the Atlas CBA by ordering it to present an ISL within 45 days.  IBT's Opp. to MSJ 16.  Not so.

The Atlas CBA provided, consistent with § 117(a)(1) of McCaskill-Bond, that "[i]f the Union represents the Crewmembers of the carrier to be merged with the Company[,] then the Union's Merger Policy shall be utilized to integrate the two seniority lists."  Atlas CBA § 1.F.2.a.i.[8]  Interpreting this provision in the Atlas CBA, the Atlas Board concluded that "Allegheny-Mohawk is not required in this case."  Atlas Award 12.  The union points to nothing in the record that indicates that the Atlas Board looked outside the CBA in arriving at this conclusion.  See Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001)

---

[8] The Atlas CBA further provided that "[i]f the Crewmembers of the two pre-merger carriers are represented by different labor organizations[,] then the two lists shall be merged using Allegheny-Mohawk Labor Protective Provisions, Sections 3 and 13[,] unless the two labor organizations mutually agree to utilize an alternative method."  Atlas CBA § 1.F.2.a.ii.  Furthermore, "[i]f the Crewmembers of the carrier to be merged with the Company are not represented by a labor organization, then the two lists shall be merged using Allegheny-Mohawk Labor Protective Provisions, Sections 3 and 13."  Id. § 1.F.2.a.iii.

12

("[I]f an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision." (internal quotation marks omitted)).

As the Court has previously ruled, the relevant inquiry is "not whether the Board correctly interpreted IBT's *merger policy* with respect to seniority list integration in imposing the 45-day deadline, but whether the Board was interpreting *the CBA* at all." Atlas Air I, 2020 WL 435353, at *9 n.8 (emphasis added). And, the plain terms of the CBA required "the Union's Merger Policy [to] be utilized to integrate the two seniority lists." Atlas CBA § 1.F.2.a.i (emphasis added). "The specifics of the Union's Merger Policy—and any factual disputes as to how long that policy would take to implement—simply do not bear on whether the Board's order to the Union to comply with that contractual provision drew its essence from the contract." Atlas Air I, 2020 WL 435353, at *9 n.8; cf. Flight Options, 863 F.3d at 543 ("Although the Carriers may find this policy unsatisfactory, it is not for them to say what the 'Teamsters Merger Policy' should look like or provide; it is the *Teamsters*' merger policy." (emphasis in original)).[9]

McCaskill-Bond—and the corollary provision in the Atlas CBA—thus supply no basis for denying summary judgment to the airlines or for revisiting the Court's prior rulings. That being the only dispute of material fact raised by the union, the Court will grant summary

---

[9] The union says little about the Southern Award's consistency with the Southern CBA. Although it cursorily points out that the Southern CBA sets no deadline for the union's presentation of an ISL, see IBT's Reply 4, Southern Air I, 19-cv-1948, the Court squarely rejected this argument in its prior ruling, see Southern Air I, 2020 WL 435428, at *9 ("The fact that the CBA did not define timely performance does not mean that the Board exceeded its authority in setting a specific deadline for the Union's compliance with its obligations under Section 1."). The union makes no developed argument why that holding was incorrect.

13

judgment to the airlines and deny the union's partial cross-motion for summary judgment and Rule 59(e) motions.

    C.  Remedy

Having concluded that the airlines are entitled to enforcement of both arbitration awards, the Court considers the appropriate remedy. Both awards ordered the union to present an integrated seniority list to the company within 45 days of the award and to thereafter commence joint collective bargaining agreement negotiations, and, if necessary, submit outstanding disputes to interest arbitration. See Southern Award 23; Atlas Award 12. Consistent those terms, the Court will order the Union to provide an integrated seniority list to Atlas and Southern within 45 days of today's order enforcing the awards. The nine-month period of joint collective bargaining negotiations shall commence from the end of that 45-day period, after which the parties shall promptly participate in interest arbitration of any unresolved bargaining issues.

**IV.  Conclusion**

For the foregoing reasons, the Court will grant the airlines' motion for summary judgment and deny the union's motions for partial summary judgment and to vacate the Court's prior rulings. Separate orders follow.

 

Date: March 31, 2020
                                                    CHRISTOPHER R. COOPER
                                                                   United States District Judge